IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARSH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROGER L. MARSH, APPELLANT.

Filed July 21, 2026.    No. A-25-680.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Roger L. Marsh, pro se.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellant.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Roger L. Marsh appeals from the order of the Douglas County District Court denying his motion for postconviction relief without an evidentiary hearing. We affirm.

## II. BACKGROUND

Following a jury trial, Marsh was found guilty of attempted first degree assault and use of a deadly weapon (firearm) to commit a felony. He was sentenced to 5 to 15 years' imprisonment on each count, to be served consecutively. On direct appeal, this court affirmed Marsh's convictions and sentences. See *State v. Marsh*, No. A-23-487, 2024 WL 3042374 (Neb. App. June 18, 2024) (selected for posting to court website). Marsh was represented by new counsel during his direct appeal.

The facts underlying Marsh's convictions are set forth fully in our previous opinion. We briefly recount the evidence presented at Marsh's trial to provide context for our analysis of Marsh's claims in the present appeal.

### 1. TRIAL EVIDENCE

Marsh's convictions stem from a March 2022 shooting that took place outside the home of Donovan Love in Omaha, Nebraska. Love hosted a gathering to watch a pay-per-view fight at his residence. Among those in attendance were Lisa R., Love's then-girlfriend, and Malec R., Lisa and Marsh's adult son. According to Love's testimony, Malec had been drinking that night and, at some point, began to argue with Lisa. Lisa requested that Love drive Malec home, but Malec declined and left Love's residence. Concerned for her son's safety, Lisa asked Love to follow Malec home. Love agreed, got in his vehicle, and went to find Malec. Upon locating Malec, Love slowly followed him from behind. Malec began to yell at Love and damaged Love's side-view mirror by "slamm[ing] his body" into it. Love then exited his vehicle and approached Malec. Malec attempted to strike Love but "lost his footing and fell on the ground." Love restrained Malec until he calmed down and eventually let him go, leaving Malec to walk home alone. Love returned to his residence and received several phone calls from Malec and Marsh throughout the night. Malec accused Love of "put[ting] his hand on [him]." In one call, Marsh threatened to "come fight" Love. Love eventually blocked Marsh and Malec's phone numbers.

Early the next morning, Love was in his driveway loading his vehicle with provisions for a family event. As Love was placing supplies into the rear passenger side of the vehicle, Marsh arrived and "jumped out" of the front passenger side of his truck. Love approached, and Marsh pulled a gun out of his pocket. Love quickly entered the driver's seat of his parked vehicle. Marsh stood in front of Love's vehicle, pointing the firearm at him through the windshield. Love attempted to exit the driveway, but his vehicle was in "warming mode" and did not move forward. Marsh then made his way to the passenger's side of Love's vehicle and looked at Love through the open rear passenger door. Love was able to start his vehicle and drove away. As he left the driveway, Love heard a "pop." Love testified the sound was a "gun firing." Ring doorbell footage was received as evidence at trial. The footage notably depicted Marsh, shortly after the shooting, looking on the ground in the driveway where Love's vehicle had been parked and then entering the front passenger seat of his truck.

Love subsequently contacted law enforcement. Upon arriving at Love's residence, an officer collected a .25-caliber shell casing from the middle of the driveway. Love also showed the officer a hole in the back of the passenger seat of his vehicle; there was no exit hole on the front of the passenger seat. According to the officer, the defect was consistent with what a .25-caliber bullet would produce. No attempt to retrieve the projectile from Love's vehicle was ever made. Three weeks after the shooting, law enforcement searched Marsh's truck and residence. No firearm, ammunition, or casings were recovered.

### 2. DIRECT APPEAL

With different counsel on direct appeal, Marsh argued, among other things, that his trial counsel was ineffective in several ways. This court concluded that all but two of his ineffective assistance claims failed. We determined the record on direct appeal was insufficient to address

Marsh's allegations that trial counsel was ineffective for (1) failing to obtain unedited versions of the Ring doorbell footage and (2) failing to inspect Love's vehicle for the projectile. Those claims were preserved for postconviction review but were not subsequently raised in the postconviction motion currently before us.

### 3. MOTION FOR POSTCONVICTION RELIEF

Marsh filed a pro se motion for postconviction relief on December 9, 2024. In the motion, Marsh alleged that his appellate counsel was deficient in failing to raise several claims of ineffective assistance of trial counsel on direct appeal (layered claims of ineffective assistance of counsel). He alleged that his appellate counsel was ineffective for not raising trial counsel's failure to (1) file a motion to quash the amended information, (2) file a motion to dismiss count I of the amended information, (3) file a motion to dismiss count II of the amended information, (4) depose or otherwise investigate certain alibi witnesses, (5) request independent DNA/fingerprint testing of the shell casing recovered from Love's driveway, (6) request independent forensic testing of the projectile embedded in the passenger seat of Love's vehicle, and (7) object to the trial court's jury instruction for attempted first degree assault. Marsh's motion also requested the appointment of counsel to represent him during postconviction proceedings.

### 4. ORDER DENYING POSTCONVICTION RELIEF

On August 18, 2025, the district court entered a 27-page order denying Marsh's postconviction motion without an evidentiary hearing. The court concluded that Marsh's layered claims of ineffective assistance of counsel were either insufficiently alleged or affirmatively refuted by the case records and files. We discuss the court's specific determinations as needed in our analysis. The court also overruled Marsh's request for the appointment of postconviction counsel.

Marsh appeals.

### III. ASSIGNMENTS OF ERROR

Marsh assigns that the district court erred in (1) denying his motion for postconviction relief without an evidentiary hearing and (2) overruling his request for the appointment of postconviction counsel. He also assigns that there is (3) plain error in the trial record.

### IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

Failure to appoint counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018).

### V. ANALYSIS

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be

sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes, supra.* An evidentiary hearing is required on a motion for postconviction relief unless (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

The material allegations in Marsh's motion for postconviction relief all relate to appellate counsel's purported failure to raise specific instances of trial counsel's ineffectiveness on direct appeal. The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." The right to counsel has been interpreted to include the right to effective counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel, as is the case here, an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland*. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

With the above principles in mind, we address the layered claims of ineffective assistance of counsel asserted in Marsh's motion for postconviction relief.

1. LAYERED CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

(a) Legal Sufficiency of Amended Information

Marsh's first three claims in his postconviction motion all relate to the legal sufficiency of the amended information.

*(i) Failure to File Motion to Quash*

In his postconviction motion, Marsh first alleges that the amended information filed against him was "not verified under oath as required by law." He further asserts that his trial counsel was "aware" of this legal deficiency and failed to challenge the amended information via a motion to quash. See Neb. Rev. Stat. § 29-1808 (Reissue 2016) (motion to quash may be made when defect is apparent upon face of record, including defects in form of indictment or in manner in which offense is charged). The district court determined that trial counsel was not ineffective for failing to file such a motion because Neb. Rev. Stat. § 29-1603(1) (Reissue 2016) only requires an

- 4 -

information to "be in writing and signed by the county attorney, complainant, or some other person," and the amended information in this case met those requirements. As such, the court found a motion to quash would have been meritless. See *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023) (defense counsel not ineffective for failing to raise argument that has no merit).

Marsh appears to have abandoned this claim on appeal. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Although Marsh has generally assigned error to the district court's denial of his postconviction motion without an evidentiary hearing, his appellate brief contains no argument on the motion to quash issue. Accordingly, we will not disturb the court's denial of this claim without an evidentiary hearing.

### (ii) Failure to File Motions to Dismiss

In his second and third claims, Marsh asserts that his trial counsel was deficient for failing to file motions to dismiss counts I and II of the amended information. He specifically contends that the State failed to allege all essential elements of the charged crimes and, as such, trial counsel should have moved to dismiss both counts as legally defective. The amended information charged Marsh with two offenses, attempted first degree assault and use of a deadly weapon (firearm) to commit a felony. The instrument reads, in pertinent part:

> [Count 1:] On or about 6 March 2022, in Douglas County, Nebraska, ROGER MARSH did then and there intentionally or knowingly attempt to cause serious bodily injury to DONOVAN LOVE in violation of Neb. Rev. Stat. §[§]28-308(1) & 28-201(4)(b) [(Reissue 2016)] a Class IIA Felony.
>
> . . . .
>
> [Count II:] On or about 6 March 2022, in Douglas County, Nebraska, ROGER MARSH did then and there use a firearm to commit any felony which may be prosecuted in a court of this state in violation of Neb. Rev. Stat. §[§]28-1205(1)(a)&(c) [(Reissue 2016)], a Class IC Felony.

As a preliminary matter, we note that a motion to quash is the proper procedural vehicle to challenge the legal sufficiency of a criminal information, not a motion to dismiss. See § 29-1808. See, also, *State v. Davis*, 310 Neb. 865, 969 N.W.2d 861 (2022) (objections to form or content of information should be raised by motion to quash). However, a determination as to how a motion should be regarded depends upon the substance of the motion, not its title. See *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). Thus, it is immaterial that Marsh's postconviction motion alleges that trial counsel should have filed motions to dismiss to challenge the legal sufficiency of counts I and II of the amended information. Regardless of the label trial counsel may have used, the motions would have been, in substance, motions to quash. Keeping this in mind, we turn to whether both counts of the amended information were legally sufficient.

### a. Legal Framework

An information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the

judgment of conviction of such charge as a bar to a later prosecution for the same offense. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). As such, an information must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime or in language equivalent to the statutory terms defining the crime charged. *Id.* Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *Id.*

However, when the charging of a crime in the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process. *Id.* Nonetheless, an information is deemed sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. *State v. Brunzo*, 262 Neb. 598, 634 N.W.2d 767 (2001). A complaint or information is fatally defective only if its allegations can be true and still not charge a crime. *State v. Theisen, supra*. No information shall be deemed invalid for any defect or imperfection which does not prejudice the substantial rights of the defendant upon the merits. *Id.*

## b. Count I

Marsh alleges in his postconviction motion that count I of the amended information was legally defective because the State omitted the statutory definition of criminal attempt. He specifically alleges that count I was required to contain the following language: "Defendant intentionally engaged in conduct that, under the circumstances as he believe [sic] them to be, was a substantial step toward committing the crime of Assault in the First Degree."

Section 28-201 provides, in relevant part:

(1) A person shall be guilty of an attempt to commit a crime if he or she:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.

(2) When causing a particular result is an element of the crime, a person shall be guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he or she intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

First degree assault is defined as "intentionally or knowingly caus[ing] serious bodily injury to another person." § 28-308. The Nebraska Supreme Court has stated: "One commits an attempted first degree assault if one intentionally engages in conduct which is a substantial step in a course of conduct 'intended or known to cause' 'serious bodily injury to another person.'" *State v. McBride*, 252 Neb. 866, 878, 567 N.W.2d 136, 145 (1997).

- 6 -

In its order, the district court noted that count I "contains verbatim language from the First Degree Assault statute, with the exception of the words 'attempt to' inserted before 'cause serious bodily injury.'" While the court acknowledged count I "did not specifically include a definition for the words 'attempt to,'" it determined that the language used, in conjunction with the citation to the criminal attempt statute, "adequately informed [Marsh] of the crime with which he was charged." The court therefore concluded Marsh's trial counsel was not deficient for failing to move to dismiss count I of the amended information.

In *State v. Sodders*, 208 Neb. 504, 304 N.W.2d 62 (1981), a defendant pled guilty to the crime of attempted first degree murder. The information filed in that case alleged "'on or about the 5th day of March' 1980 '[the defendant] . . . did . . . purposely and with deliberate and premediated malice attempt to kill [his wife]." *Id.* at 505, 304 N.W.2d at 64. The defendant appealed from an order denying a motion to vacate his conviction and sentence, arguing, among other things, that the information failed to charge the essential statutory elements of criminal attempt. The Nebraska Supreme Court concluded that the information adequately informed the defendant of the crime with which he was charged and was sufficiently definitive so as to permit him to plead the judgment as a bar to a later prosecution. The court stated: "We hold that, *in the absence of a motion to quash*, an information which alleges an attempt to commit an act or acts which if successful would constitute a statutory crime sufficiently charges an attempted crime so as to withstand a jurisdictional attack made for the first time on appeal." *Id.* at 510, 304 N.W.2d at 66. (Emphasis supplied).

We acknowledge that the holding in *Sodders* arguably leaves open the possibility that a motion to quash may be appropriate where an information fails to expressly allege the statutory definition of criminal attempt. Nevertheless, even assuming without deciding that trial counsel performed deficiently by failing to challenge count I as legally insufficient, Marsh cannot establish prejudice. See *State v. Alford*, 24 Neb. App. 213, 884 N.W.2d 470 (2016) (no prejudice where trial counsel failed to file motion to quash because even if motion was sustained, defects could easily be remedied by filing new complaint). Nothing in the records or files of this case suggests that the State would have been unable to amend its pleading and expressly incorporate the statutory language defining criminal attempt. Therefore, we agree with the district court that Marsh is not entitled to an evidentiary hearing on this claim.

c. Count II

Marsh next alleges that his trial counsel should have challenged count II of the amended information as legally insufficient. In his postconviction motion, Marsh points out that the State did not specifically identify the underlying felony supporting the charge of use of a deadly weapon (firearm) to commit a felony. The district court concluded trial counsel was not ineffective because the language used in count II was "nearly identical" to that found in § 28-1205(1)(a), and, therefore, Marsh was "reasonably informed of the nature of the crime charged."

Section 28-1205(1)(a) prohibits any person from "us[ing] a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state[.]" As the district court explained, this language mirrors what was charged in count II of the amended information. Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the

charge is sufficient. *State v. Theisen, supra*. In addition, even if we assume that trial counsel was deficient in failing to move to dismiss count II, Marsh would not be able to establish prejudice. As mentioned above, any defect could have been easily cured by the filing of a new information by the State. See *State v. Alford, supra*. Accordingly, trial counsel was not deficient for failing to file a motion to quash count II of the amended information nor can Marsh establish prejudice.

### (b) Failure to Investigate

Marsh's next three claims relate to trial counsel's alleged failure to investigate various aspects of the case.

### (i) Failure to Depose or Call Alibi Witnesses

Marsh alleges in his postconviction motion that he discussed a potential alibi defense with trial counsel. He purportedly told counsel that he and his wife were at a friend's house in Omaha at the time of the shooting. Marsh indicated that his wife, "Mr. Harris," and "Ms. Ray" "would have testified that [he] was with them at the time of the alleged incident on March 6, 2022," had counsel deposed those witnesses or otherwise adequately investigated the case. The district court determined that Marsh's allegations were insufficiently stated. The court further concluded that the trial record affirmatively demonstrated Marsh was not entitled to relief on this claim. Specifically, the court noted that Love identified Marsh as the shooter during his testimony at trial, and the State introduced video evidence showing Marsh in front of Love's house at the time of the shooting, thereby undermining any proposed alibi defense.

Even if we assume that Marsh sufficiently alleged his alibi claim, we agree with the district court's conclusion that the trial record affirmatively shows he is not entitled to relief. At trial, the State offered a video extracted from Love's Ring doorbell camera. The footage depicted Love's vehicle leaving the residence and showed Marsh inspecting Love's driveway before walking back toward his truck parked in front of Love's home. The jury also reviewed two still photographs taken from the footage, placing Marsh in front of Love's home after Love fled the driveway. In light of this evidence, Marsh cannot establish a reasonable probability that, but for counsel's alleged deficient performance, the outcome of the trial would have been different. Accordingly, the court properly denied this claim without an evidentiary hearing.

### (ii) Failure to Secure Independent Forensic Testing

Marsh's next two claims concern trial counsel's purported ineffectiveness in failing to secure independent forensic testing of (1) the .25-caliber shell casing recovered by police in Love's driveway after the shooting and (2) the projectile embedded in the passenger seat of Love's vehicle. In his postconviction motion, Marsh generally asserts that trial counsel's failure to secure independent testing prejudiced him because it "allowed Love's devastating shell casing and bullet hole testimonies [sic], to go virtually unchallenged" and deprived him of the opportunity to present potentially favorable testimony.

The district court determined that both claims were insufficiently alleged because they consisted only of conclusory allegations. We agree. The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

An evidentiary hearing on a defendant's motion for postconviction relief is not warranted where the motion alleges only conclusions of fact or law without supporting facts. See *id.* Here, Marsh's motion fails to allege specific facts demonstrating prejudice resulting from trial counsel's failure to obtain independent forensic testing. Although the motion broadly asserts that additional investigation could have produced "testimony favorable to Marsh," he does not identify what exculpatory evidence the testing would have revealed, identify an expert witness who would have offered favorable opinions, explain the substance of any potential testimony, or describe how the proposed evidence would reasonably undermine confidence in the outcome of trial. Instead, Marsh's allegations rest entirely on the assumption that independent forensic testing might have yielded beneficial results that cast reasonable doubt as to his guilt. Accordingly, we conclude that the district court properly denied these claims as conclusory.

### (c) Attempted First Degree Assault Jury Instruction

Marsh asserts that his trial counsel was ineffective for failing to object to the district court's jury instruction for attempted first degree assault because it did not specifically identify Love as the victim. The jury instruction at issue reads, in pertinent part:

A. Elements

The elements which the State must prove beyond a reasonable doubt in order to convict the Defendant of Attempted Assault in the First Degree are:

(1) That the Defendant intended to commit the crime of Assault in the First Degree; and

(2) That on or about March 6, 2022, in Douglas County, Nebraska, the Defendant intentionally engaged in conduct that, under the circumstances as he believed them to be, was a substantial step toward committing the crime of Assault in the First Degree; and

(3) The Defendant's conduct strongly corroborated his intent to commit the crime of Assault in the First Degree.

The crime of Assault in the First Degree is committed when a person intentionally or knowingly causes serious bodily injury to another person.

The court determined in its order that trial counsel was not deficient because the instruction given was "based on the model instruction in the Nebraska Jury Instructions." The court further reasoned Marsh could not establish he was prejudiced by counsel's performance because the evidence adduced during trial showed that the "only possible victim" in the case was Love.

We agree with the district court that trial counsel was not deficient in failing to object to the above jury instruction. The Nebraska Supreme Court has explained that when there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). Here, as mentioned by the district court, the instruction provided to the jury was substantially the same as NJI2d Crim. 3.3 (elements of attempt). Accordingly, the court properly rejected this claim.

### 2. APPOINTMENT OF POSTCONVICTION COUNSEL

Marsh next assigns that the district court erred in denying his request to appoint postconviction counsel. Under the Nebraska Postconviction Act, it is within the discretion of the

trial court as to whether counsel shall be appointed to represent the defendant. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018). Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint counsel. *Id.* Since the court correctly denied Marsh's motion for postconviction relief without an evidentiary hearing, it did not abuse its discretion in overruling Marsh's request for the appointment of counsel.

### 3. Plain Error

Marsh lastly assigns that there is "[p]lain error in the record." Brief for appellant at 2. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025). In the argument section of his brief, Marsh reasserts that the amended information in his case was legally defective and that the jury instruction for attempted first degree assault was erroneous. He asks us to consider these purported defects under a plain error analysis. However, as the State argues in its brief, these claims are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court. *Id.* Marsh could have raised these issues of plain error on direct appeal. His failure to do so bars him from doing so now.

### VI. CONCLUSION

For the foregoing reasons, we affirm the district court's August 18, 2025, order denying Marsh's motion for postconviction relief without an evidentiary hearing.

Affirmed.